PACIFIC GAS & FUEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104527. Promulgated June 3, 1942.

*George S. Atkinson, Esq.,* for the petitioner.
*Donald P. Moyers, Esq.,* for the respondent.

OPINION.

HARRON: The question is whether or not the amounts received by petitioner under the agreement with American Liberty Oil Co. constituted personal holding company income for the years 1936 and 1937. The definitions of personal holding company income, section 351 (b) of the Revenue Act of 1936 and section 353 (h) of the Revenue Act of 1936 as amended, are set forth in the margin.[1] Since the definition

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES [Revenue Act of 1936].

\* \* \* \* \* \* \*

(b) DEFINITIONS.—As used in this title—

(1) The term "personal holding company" means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank, as defined in section 104, and other than a life-insurance company or surety company) if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. \* \* \*

\* \* \* \* \* \* \*

SEC. 353. PERSONAL HOLDING COMPANY INCOME [Revenue Act of 1936, as amended].

For the purposes of this title the term "personal holding company income" means the portion of the gross income which consists of:

\* \* \* \* \* \* \*

(h) MINERAL, OIL, OR GAS ROYALTIES.—Mineral, oil, or gas royalties, unless (1) constituting 50 per centum or more of the gross income, and (2) the deductions allowable under section 23 (a) (relating to expenses) other than compensation for personal services rendered by shareholders, constitute 15 per centum or more of the gross income.

is different in the 1936 and 1937 Acts, the two years must be considered separately.

Section 351 of the 1936 Act first appeared in substantially the same form in section 351 of the 1934 Act. Therefore, the legislative history of the 1934 Act is important in determining the intent of Congress. From a study of the committee reports on the 1934 Act, it is apparent that the primary object of the personal holding company provisions was to prevent tax avoidance by wealthy individuals through use of the "incorporated pocketbook." See Report of the Ways and Means Committee on the Revenue Bill of 1934, 73d Cong., 2d Sess., H. Rept. No. 704, p. 11; Senate Finance Committee Report on the Revenue Bill of 1934, 73d Cong., 2d sess., S. Rept. No. 558, p. 13, *et seq.*

Petitioner argues that it was not the purpose of the statute to reach this corporation, having regard for the purposes set forth in its own charter as well as the Congressional intent. In making the argument, petitioner overlooks the fact that, in order to carry out its purpose of preventing tax avoidance and at the same time eliminate questions of subjective intent (cf. Ways and Means Report, *supra*, p. 11), Congress determined that a corporation whose stock was owned by a limited group and whose income came from certain sources should be deemed to be a personal holding company. The method which Congress chose to attain its purpose was by definition of a personal holding company in terms of stock ownership and sources of income. Both the House and Senate recognized that such a broad definition might include corporations which were not being used for purposes of avoiding surtaxes on shareholders. H. Rept. No. 704, *supra*, p. 12; S. Rept. No. 558, *supra*, p. 15. For that reason provisions were made so that the bill would not work hardship on any corporation except those used to avoid surtaxes on the shareholders. That is, section 351 (b) (2) (C) and (d) of the 1936 Act and section 355 of the 1936 Act as amended allow credits in determining the undistributed adjusted net income upon which the surtax is levied, for dividends paid to shareholders. The fact that such provisions were made in the statutes shows that it was not the intent of Congress to exempt from the provisions of the act corporations other than "incorporated pocketbooks." In any event, the terms of the statute, as written, must be followed. A parallel situation in which the courts have recognized that the act covers all corporations which come within the scope of statutory definitions, whether or not used to avoid surtaxes on shareholders, is found in the treatment accorded small loan companies. See *Girard Investment Co.* v. *Commissioner*, 122 Fed. (2d) 843; certiorari denied, 314 U. S. 699; *Noteman* v. *Welsh*, 108 Fed. (2d) 206.

The real question is whether petitioner's income came from the sources enumerated in the statute. Royalties are included among

the enumerated sources. There can be no doubt that the amounts received by petitioner as lessor out of the oil produced from the leased property constituted royalties within the ordinary sense of the word.[2] Petitioner argues, however, that the term as used in the statute does not refer primarily to oil and gas royalties.

The Revenue Bill of 1934 which passed the House included royalties in personal holding company income. While the bill was pending before the Senate Finance Committee some attempt was made to have corporations dealing in oil and gas royalties excluded from the personal holding company provisions. Revenue Act of 1934, Hearings Before the Committee on Finance on H. R. 7835, U. S. Senate, 73d Cong., 2d sess., pp. 145–153. Despite that attempt to gain special treatment for corporations dealing in oil and gas royalties, the act as passed contained no special mention of oil and gas royalties. The conference report on the bill did, however, contain the following explanation:

* * * The House bill defined a personal holding company as a corporation, 80 percent of whose gross income was derived from rents, royalties, dividends, interest, annuities and gains from the sale of stock or securities, and 50 percent in value of whose outstanding stock was owned by not more than five individuals. As used in the section, the term "royalty" is not intended to include overriding royalties received by an *operating company* [emphasis supplied]. [Conference Report on the Revenue Bill of 1934, 73d Cong., 2d sess., H. Rept., No. 1385, p. 20.]

In light of that explanation of Congressional intent, the problem arises whether petitioner was an operating company. It is stipulated that petitioner's only activities during 1936 were incidental to handling its affairs under the agreement with American Liberty Oil Co. Its activities were not the activities of an operating company. The mere fact that petitioner's charter gave it power to engage in active operations and the fact that petitioner had at one time, in a prior year, drilled a dry well, do not make petitioner an operating company. Likewise, we deem it unimportant that under the agreement with the American Liberty Oil Co. petitioner had the option to participate actively in the operation of the property. The fact is that petitioner did not exercise that option. Thus we conclude that royalties received by petitioner were not of the type which Congress intended to exclude from section 351 of the 1936 Act.

Since it is conceded that more than 50 percent of petitioner's stock was owned by one individual, and that all of its income during 1936 came from the agreement with American Liberty Oil Co., we hold that petitioner was taxable as a personal holding company for the year 1936.

---

[2] For cases discussing the meaning of the term "royalties" see *Ktesau Petroleum Co.,* 42 B. T. A. 69 ; *Porter Property Trustees, Ltd.,* 42 B. T. A. 681 (on appeal C. C. A., 9th Cir.) ; and *Logan Coal & Timber Association,* 122 Fed. (2d) 848, reversing 42 B. T. A. 529.

The Revenue Act of 1937 made certain changes in the treatment of royalties for purposes of determining personal holding company income. The changes were made by the Senate Finance Committee, with the following explanation:

The committee recommends the insertion in section 353 of new title IA, which relates to the gross income of personal holding companies, of a new subsection (sec. 353 (h) ) dealing with income from mineral, oil, or gas royalties. The effect of the subsection is to exclude such royalties from personal-holding-company income if they constitute 50 percent or more of the gross income of the corporation. This provision is subject to the limitation that, in order for such income to be excluded, the amount allowable for the taxable year for expenses under section 23 (a) must constitute 15 percent or more of the gross income. Compensation to shareholders for personal services is not to be counted as part of the 15 percent. This amendment will not exclude royalty income if it constitutes less than 50 percent of the gross income, and it is believed that the 15-percent expenses requirement will furnish a satisfactory separation between companies which may be classified as operating companies and the pure holding-company type. The amendment to section 353 (a) is a technical amendment made necessary by reason of the insertion of the new section 353 (h). [Senate Finance Committee Report on the Revenue Bill of 1937, 75th Cong., 1st sess., S. Rept. No. 1242, p. 1.]

The sums received by petitioner were clearly mineral, oil, or gas royalties constituting more than 50 percent of petitioner's gross income. However, the deductions allowable under section 23 (a) did not amount to 15 percent of petitioner's gross income.[3] Therefore, under the terms of the statute, the royalties received by petitioner in 1937 constituted personal holding company income. No question need be raised as to whether or not petitioner was an operating company, inasmuch as the existence of deductions under section 23 (a) amounting to more than 15 percent of the gross income was deemed by Congress to be a conclusive test of whether or not a company was an operating company. Accordingly, it is held that petitioner was taxable as a personal holding company for the year 1937.

Petitioner has not shown that its failure to file personal holding company returns was due to reasonable cause. The erroneous impression that petitioner was not a personal holding company is not the reasonable cause required by section 291 of the Revenue Act of 1936. *R. Simpson & Co., Inc.*, 44 B. T. A. 498 (on appeal C. C. A., 2d Cir.); *Saxon Trading Corporation*, 45 B. T. A. 16; cf. *Estate of Frederick C. Kirchner* 46 B. T. A. 578. Respondent's imposition of the 25 percent penalty must, therefore, be approved.

*Decision will be entered for the respondent.*

---

[3] The gross income shown on petitioner's return for 1937 is $2,043.13, and the only deduction claimed under sec. 23 (a) is for legal and professional fees in the amount of $130. In the notice of deficiency respondent reduced the gross income by $939. No adjustments were made to the deductions claimed under section 23 (a).